We have one motion to be argued in Natural Resources et al. versus National Highway et al. 172780. We'll hear that motion now. Good morning, Your Honors. David Franco with the State of New York speaking on behalf of all petitioners. With me are David Zaff from California and Ian Fine from NRDC. I understand this Court typically doesn't grant rebuttals in motion arguments. I would ask if the Court is willing to grant a brief one-minute rebuttal. We'll see how it goes. Thank you, Your Honor. May it please the Court. In the Inflation Adjustment Act, Congress required NHTSA to update long-outdated civil penalties by August 2016, which NHTSA did. NHTSA's subsequent decision to indefinitely suspend the final civil penalties rule without notice and comment should be summarily vacated, because it flagrantly violates this Court's clear precedents in two respects. First, NHTSA lacked authority. The Inflation Adjustment Act prohibits NHTSA from postponing the effective date of the civil penalties rule, and NRDC v. Abraham confirms that an agency has no inherent authority to suspend a rule pending reconsideration. Second, as this Court also held in Abraham, notice and comment is required for a delay of this type. As in Abraham— Did we hold that in Abraham, or was that dicta in Abraham? That was a holding in Abraham, Your Honor. There are several separate holdings in Abraham. Part of it is the anti-backsliding provision and when a rule takes effect, and that is upon publication. But Abraham also independently addressed two other grounds in that case for finding that the action there was unlawful. And one is that agencies simply don't have inherent authority to suspend and reconsider final rules, and as well that an agency's decision to review and consider a rule and consider a new policy choice simply does not constitute good cause. For purpose of avoiding the notice and comment— So one of the issues, as I understand it, has to do with the timing of your petitions. The timing of our petitions? Yes, Your Honor. So again, Abraham clearly answers this argument. Interveners have argued that the petitions were untimely, but Abraham confirms that prescribe and publish, prescribe being the operative word used here, are interchangeable within the same provisions of this very statute, EPCA, and also, more specifically, that the time to bring a petition runs from publication. Both the state parties and the environmental parties in this case filed within the 59 days as required by that provision. We can't grant your motion unless we agree that the publish date is the prescription date, right? I mean, if it's the promulgation date, then we can't do it. That's correct, Your Honor. Timeliness does bear on this Court's ability to adopt the motion, but Abraham is very clear on this point that in the context of EPCA specifically, prescribe and publish are interchangeable. The only case that the respondents and interveners cite is Minetta in support of their position that it's not publication, and that case involves entirely different language about when an order was issued that simply has no bearing on prescribed and no bearing on this Court's decision in Abraham, which did address that very question. On the merits— Let me decide this rather than just have it go forward for the appeal. Can you say that again, Your Honor? Why should we decide this question instead of the merits panel? Well, two reasons, Your Honor. First, in terms of summary vacatur, this really is an exceptional case. The NHTSA has flouted settled principles of administrative law, and allowing the suspension to linger would grant the exact unlawful result that they seek to achieve here. Moreover, this isn't really a typical motion for summary vacatur. There has been a full airing of the merits. We've had responses totaling about 80 pages from respondents as well as two interveners. We're having a hearing right now, and I would suggest that this Court can be guided by the D.C. Circuit's decision in Clean Air Council, where the Court addressing a similar unlawful suspension found that summary vacatur was appropriate, and it found that even without granting the hearing that we're having today to further air the merits. And also, we have sought alternative relief. So in addition to the summary vacatur, we would ask this Court to stay the suspension pending any disposition on the merits. What are the immediate practical consequences of the delay rule? Well, the practical consequences is that the industry right now is making decisions that are going to be locked in. They're not locked in if the courts say they can't do it. They can be unlocked. Well, but not their design and technology decisions. And when they make these design and technology decisions that need to be made at least 18 months or more in advance. I've noticed that there's a lawsuit. They're on notice that they're being challenged. They are on notice of a lawsuit. But NHTSA has also advised in its separate reconsideration action that the outdated penalty, the outdated $5.50 penalty is currently in effect because of this unlawful suspension. An industry should not be entitled to rely on that unlawful suspension, nor should they be entitled to rely on speculation. You're relying on it when you're challenging it, and eventually you might prevail. We could prevail, but right now they're looking at what the agency has said in this case. I think it's likely that we would prevail. And clear guidance from this court, either disposing of the merits in summary evacuator or a stay, would clarify to the industry actors that are making those decisions. You also asked for an expedited appeal. Is that correct? In the alternative, if this court doesn't grant summary evacuator, we would seek an expedited appeal. We feel that the issues here, that the merits are so clear that we'd actually be willing to rely. There's a separate issue of whether you asked for a stay from NHTSA. Could you address that very briefly? Yes, Your Honor. So we have not separately gone through a stay under Rule 8. You want a stay of the delay. We do, Your Honor. We're asking this court to clarify that. The delay order preserves the status quo. I mean, right now it's just preserving the status quo. The agency's delay order does not preserve the status quo. As the D.C. Circuit explained in Clean Air Counsel, the status quo isn't the status quo the existing CAFE standards? Well, the status quo is the existing CAFE standards and also the final civil penalties rule that was duly promulgated and was to come into effect. That's $14.50. The ones that are operating. It's $14. No, the ones that are currently guiding the industry was the old rule, correct? With the delay in place. On August 2016, NHTSA published an interim final rule that was effective within a month. So it was promulgated in July, became effective in August. They revised that decision after granting industry petitions for reconsideration, and that revision was to come into effect in January. And that is what NHTSA. Let's be very clear, because I just want to be very clear what the status quo is. That revision was supposed to come into effect in January, but it hasn't. That's correct. The revision hasn't come into effect. So the situation that exists now is the same situation that exists three years ago? In terms of what? Not in terms of what has happened in the courts or happened in the regulatory world, but in terms of what industry has to comply with. That's correct, and that's in defiance of the Inflation Adjustment Act. That may be, but that is the current status quo. Well, I would dispute that for one reason, Your Honor, which is that Clean Air Council, for example, is clear that when an agency duly promulgates the final rule, the status quo is that that rule goes into effect as planned, and that when agencies use nonexistent power to suspend that, what they are actually doing is changing the status quo as it exists on the ground. No. Can you hear me? Yes, Judge. And your point is that that rule should be the one that's in effect and that the delay should never have been issued? Yes, that's correct. The delay is unlawful. The agency lacked authority. Even if it had authority, it would have to go through notice and comment procedures, and it's the $14 penalty, not the outdated $550 penalty, that should be in effect right now. So how quickly could you have this ready for appeal? If this Court moved to an expedited briefing schedule, we'd be content to go as fast as this Court required, potentially a couple weeks.  In fact, that we'd be willing to rely on our opening briefs submitted in this motion. We'd, of course, reserve the right to apply, but either that or with all due speed as this Court would direct. Thank you. Thank you. Mr. Byron. Thank you, Judge LaHaye. May it please the Court, Thomas Byron from the Department of Justice here on behalf of the government. Petitioners have contended that Nitze's action here was exceptional, but in fact I think what's truly exceptional is the motion seeking summary disposition in what is itself a really unusual kind of case, a challenge to an agency action that has no practical significance. Indeed, the agency itself found that in justifying its action in the delay rule. There's no practical significance here to the agency action under review in this case at all because the December 2017 final rule on reconsideration delayed the imposition of the increased civil penalty rate to model year 2019. So model year 2019 won't be completed until late in the year of 2019, and there won't be any occasion to calculate whether there's any failure to meet the CAFE standards themselves and therefore whether there's any occasion to impose any civil penalties under that regime until sometime in 2020 at the earliest. Now, I can tell the Court, and I'd be happy to submit this in a 28-J letter if it's appropriate after the argument, but I can tell the Court that there is a draft notice of proposed rulemaking under review at the Office of Management and Budget, and that has been posted on the regulatory review website of OMB. Are you aware of any other similar delay rule that was not subject to notice and comment? Your Honor, I have not canvassed the action of every agency over the decades. I take it your answer is no. My answer is no, but I also have had no occasion to look for them, frankly, or no real way to find them. And I think the real key here to keep in mind in this respect is the offset, the discongruity between what's the nominal effective date in the December 2017 final rule, which was 30 days after publication, and the actual compliance date or the date of significant effect, which is after model year 2019. So the reason I mentioned the draft – Counsel? Yes, Your Honor. Counsel, doesn't the rule affect design, which has to be implemented, at least as I understand your adversary, has to be implemented well before 2019 or 2020, whichever year we're talking about? So Judge Hall – Three years out or two years out? So, Judge Hall, I think the answer to that is we don't know whether it does or not. And what the industry interveners have explained in their opposition to the motions is that there is a very complex set of calculations that will need to be done in order to determine whether there is any failure to comply with the underlying CAFE standards. That includes – that calculation includes these credits that can either be carried forward or carried backward and transferred and purchased. And NHTSA made this point in its agency action here when it explained that historically there's been very little imposition and payment of penalties because of that complex calculation. And the industry interveners and we have also pointed out that that speculation about whether the bare increase – I'm sorry, the bare delay of the effective date wholly apart from the level of – the ultimate level of the civil penalties that NHTSA settles on in reconsideration or that a court, as Judge Walker pointed out, might later determine is necessary or appropriate under the appropriate form of judicial review after that reconsideration is complete. Wholly apart from that actual rate, there's no way to discern any injury for standing purposes solely from the delay of the effective date, which is the only thing before this court. And I would emphasize, if I may, that both this court – I'm sorry, that both the D.C. Circuit and Clean Air Council and other courts that have addressed these questions have emphasized that the underlying reconsideration is entirely proper. There is nothing wrong with the agency undertaking that reconsideration. Petitioners here are raising this very odd narrative. I understand that this is not the standard, but I want to understand, just as a practical matter, what is the harm to the public interest of a stay of the delay rule, given what you said and how you started this argument? So, Judge Lohe, I think the answer to that is the uncertainty that would flow for manufacturers and the public as a whole about what the standard is going to be, if I may continue answering your question, about what the standard is going to be for Model Year 19 and after. So that question will be resolved in the underlying reconsideration. But just to turn back to what I think is . . . because of the delay rule. To be sure, not only because of the delay rule, but also because of the underlying reconsideration. So, Judge Walker, I think you made the point earlier that the agency could impose a higher rate, even the $14 rate, or this court or another court on review of the ultimate reconsideration could impose a different rate. But what I think the harm to the public interest also conflates with the injury to the agency's ability to manage its own ongoing efforts. And this is the Vermont Yankee point, Your Honor, that we made in our opposition. And in this context, it's extremely odd to consider what amounts to a stay of a stay. It would, as Judge Walker pointed out, disrupt the status quo, and it would cause questions about the agency's ongoing reconsideration, which are inappropriate at this time. I noticed that . . . would you have any objection to an expedited appeal? A reasonably expedited briefing schedule would be certainly appropriate, Your Honor. I would point out . . . How about April 9th? Would that be a possibility for hearing the appeal? For an oral argument date, Your Honor? Yeah. So I think we would need, I think, at least three weeks to complete our brief in response to any opening brief. I think it would be odd for petitioners to rely solely on their motions as an opening brief. They don't address, the motions don't address standing. No, one would assume that there would be a brief. I hope so, Your Honor. That's right. They could supplement it. So I hope they would file . . . You have no problem with an expedited briefing schedule? An expedited briefing schedule, reasonably expedited. We would like three weeks to file our brief in response to any brief that they file, which hopefully would address all of the issues that have been raised in this motion filing process. If the Court has no further questions, we'd urge you either to deny the motion or carry it to the merits panel. Thank you very much. Thank you, Your Honor. A full reserve decision, well argued on both sides, no rebuttal.